IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| IMPAC WAREHOUSE LENDING GROUP, INC., ) <br> ) <br>     **Plaintiff** ) <br> ) <br> v. ) <br> ) <br> ) <br> DOMENICO REALI and ANNA REALI, ) <br> ) <br>     **Defendant.** ) <br> ) | Case No. 2:04-cv-426-FtM-33SPC <br><br> Judge Thomas A. Wiseman, Jr. |

## MEMORANDUM

Plaintiff Impac Warehouse Lending Group, Inc. ("Plaintiff") filed its Complaint against Defendants Domenico Reali and Anna Reali ("Defendants") on August 18, 2004 alleging that Defendants signed and breached a Continuing Guarantee (the "Guarantee") of payment for millions of dollars of certain underlying debt of General Mortgage Corporation of America, d/b/a The Loan Outlet ("GMCA") allegedly owed to Plaintiff. Defendants filed their initial Motion for Summary Judgment (Doc. No. 77) on June 28, 2006. With the Court's permission, Defendants filed their Amended Motion for Summary Judgment (Doc. No. 92) on August 25, 2006 relying on and adding Defendants' Forensic Document Examiner Jean Joanne Berrie-Perrino's ("Defendants Expert" or "Ms. Berrie-Perrino") Supplemental Expert Report as an exhibit.[1] Plaintiff filed its Memorandum of Law in Opposition to Defendants' Amended Motion for Summary Judgment (Doc. No. 97) on September 15, 2006. Defendants filed a reply (Doc. No. 101) on September 26, 2006. For the reasons set forth below, the Court will DENY Defendants' Motion for Summary Judgment.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Defendants are husband and wife and at all times relevant to this action were directors and controlling shareholders of a retail mortgage lending corporation known as GMCA. Plaintiffs contend Defendants also provided the start-up capital necessary to establish the corporation, which was operated by

---

[1] Defendants sought and were granted leave from this Court to amend their initial Motion for Summary Judgment to include Defendants' Supplemental Expert Report as an exhibit (Doc. No. 87). Plaintiff filed a Motion to Strike Defendants' Supplemental Expert Report ("Motion to Strike") on September 6, 2006 (Doc. No. 95). Plaintiff's Motion to Strike was denied by order of this Court on January 17, 2007.

their son Augustino Reali ("A. Reali") and his wife, Linda Durkin ("Durkin").[2] (Doc. No. 97, at 5, 10).

Plaintiff Impac is a corporation engaged in the business of mortgage warehouse lending. As a mortgage warehouse lender, Impac provides lines of credit to retail mortgage lenders who use the funds supplied by Impac to originate residential mortgages. (Doc. No. 97, at 6). GMCA was a retail mortgage warehouse lender based in Cape Coral, Florida to which Impac provided such credit. In order to secure the funds advanced by Impac to GMCA, Impac required that GMCA's indebtedness be personally guaranteed by GMCA shareholders and directors.

On or about April 20, 2000, Plaintiff agreed to extend credit and provide financing to GMCA in exchange for the execution of the Guarantee allegedly signed by Defendants. (Pl.'s Compl. at ¶ 11 (Doc. No. 1)) Pursuant to the Guarantee, notarized by Florida notary Jill Crouch, the guarantors personally and unconditionally agreed and promised to pay to Impac any and all indebtedness and obligations of GMCA to Impac, including future anticipated advances. (Doc. No. 97, at 7), In or around June, 2000, Impac entered into an agreement with GMCA (the "Mortgage Warehousing Agreement") whereby GMCA borrowed funds from Impac to be used to originate and fund residential loans. Over the course of their business relationship, GMCA borrowed millions of dollars from Impac to fund and close residential mortgage loans.

In or about July 2004, GMCA defaulted on its obligations to Impac. Shortly thereafter, GMCA filed for bankruptcy. According to Plaintiff, GMCA owes Impact over $3.4 million in principal for monies advanced by Impac to GMCA to close residential mortgage loans which GMCA failed to repay to Impac. On August 11, 2004 (five days before filing the present case) Plaintiff filed a separate action on the underlying debt against GMCA, A. Reali and Durkin alleging that the over $3 million in funds advanced to GMCA to fund residential mortgages were fraudulently obtained through a series of forged and fraudulent loan documents

---

[2]Defendants apparently dispute the contention that they served as directors and controlling shareholders of GMCA or that they provided the start-up capital for the corporation. In their Amended Answer to the complaint, Defendants denied that they are officers and directors of GMCA (Doc. No. 69), yet Plaintiff has produced documentary evidence and set forth deposition testimony contradicting this assertion and indicating that Defendants provided the start-up capital for GMCA. (Doc. No. 97, at 5). For purposes of the present motion, the Court reviews the evidence in the light most favorable to Plaintiff and resolves all reasonable doubts about the facts in favor of Plaintiff as the non-moving party. Plaintiff also alleges that Defendants allowed their names and their credit to be used by GMCA, A. Reali and Durkin in order to help get GMCA off the ground. This a fact that is clearly in dispute and is not relevant to disposition of the present motion.

they created and used for their own benefit.[3]  *See Impac Warehouse Lending Group, Inc. v. General Mortgage Corporation of America, et. al.*, Case No. 04-cv-418 FRM 29 SPC (the "Prior Action").  The Prior Action was originally scheduled to be tried before the case at bar, but was stayed by Court Order entered on October 13, 2006 due to A. Reali and Durkin's filing of bankruptcy.  The Prior Action is currently stayed pending resolution of bankruptcy proceedings.[4]

On or about August 17, 2004, Plaintiff filed this action against Defendants seeking to recover the unpaid balance due and owing from GMCA, together with accrued interests and costs, as the personal guarantors of GMCA's indebtedness.  Plaintiff alleges that Defendants signed the Guarantee and are therefore liable for over $3 million of underlying debt accrued by GMCA.  The Guarantee is the sole basis for Plaintiff's claims against Defendants.  Defendants contend that they did not sign the Guarantee and their signatures on the Guarantee are forgeries.  (Doc. No. 92, at 3.)  Based on this contention and their expert's reports supporting it, Defendants argue that there is no genuine issue of material fact as to this issue and they are entitled to judgment as a matter of law.  Defendants' Amended Motion for Summary Judgment is now before this Court.

## II. STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." *Branche v. Airtan Airways, Inc.*, 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could

---

[3] The Court denied Defendants' request that the Court take mandatory judicial notice of all pleadings filed now and in the future in the Prior Action on January 17, 2006.

[4] Defendants filed their Renewed Motion to Stay on December 21, 2006 requesting the Court stay the present action, or in the alternative, enter an Order granting their Motion in Limine to Preclude Evidence of Liability on the Guaranty Pending the Determination of the Underlying Debt and to Preclude the Testimony of A. Reali and Durkin.  The motion was based on the contention that the validity of the underlying debt has not been proven and cannot be proven at trial due to the stay of the action against A. Reali and Durkin on the underlying debt.  The Court issued an order denying Defendants' motion to stay in its entirety on January 17, 2007.

return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether summary judgment is appropriate for either party herein, the Court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in favor of the party opposing the motion. *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).

### III. DISCUSSION

This is an action for breach of a Guarantee, under which Defendants allegedly jointly, severally and unconditionally promised to pay Plaintiff all indebtedness owed by GMCA by signing the Continuing Guarantee. It is clear that the Guarantee is a promise to answer for the debt of another and under the statute of frauds must be in writing. The statute of frauds provides, in pertinent part:

> No action shall be brought . . . to discharge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the parties to be charged therewith . . . .

Fla. Stat. § 725.01 (1999). Neither party disputes that the Guarantee falls within this portion of section 725.01, thus requiring both Defendants' signatures. Further, there is no question that Plaintiff loaned GMCA money and GMCA has not yet repaid those funds, thereby triggering the Guarantee.[5] The only issue before the Court is whether as a matter of law Defendants have set forth conclusive evidence to establish that there is no genuine issue of material fact that the signatures on the Guarantee are not those of either Defendant. (Doc. No. 92, at 6-7 & Doc. No. 97, at 10).

Generally, when there is conflicting evidence, the question of whether a party's signature is authentic is a question for the jury. Yet, Defendants claim that there is no dispute – they did not sign the Guarantee – and they are therefore entitled to summary judgment. (Doc. No. 92, at 5-6). In support of this argument, Defendants rely on (1) their own sworn Affidavits in which they state that they did not sign the Guarantee and that they have never been affiliated with GMCA; and (2) the reports of their handwriting expert, Ms. Berrie-

---

[5] As noted in the Court's January 17, 2007 Order denying Defendants' Motion to Stay, any dispute as to the validity and amount of the underlying debt can be resolved at trial. (Doc. No. 130). It is undisputed that Plaintiff loaned money to GMCA, whether A. Reali and Durkin fraudulently obtained the loans and the amount of the underlying debt is not relevant to the motion for summary judgment presently before the Court.

Perrino, who opined that it is highly probable that the signatures on the Guarantee did not match the signatures of Defendants on the affidavits and other documents.[6] (Doc. No. 92, at 6). Defendants claim that Plaintiff has not refuted this sworn testimony and expert opinion with affidavits or sworn testimony, thereby showing that they cannot prove that Defendants signed the Guarantee and summary judgment must be entered in favor of Defendants.

In response, Plaintiff points to both documentary and testimonial evidence that Plaintiff claims establishes that Defendants not only signed the Guarantee, but were intimately involved in establishing and financing the start-up capital for GMCA.[7] (Doc. No. 97, at 4-5.) According to Plaintiff, discovery in this action has clearly revealed evidence directly contradicting Defendants' "self-serving" affidavits and Defendants' expert reports. (Doc. No. 97, at 9). Plaintiff cites first to the testimony of Defendants' son A. Reali who testified, contrary to the Defendants' assertion, that Defendants were involved with GMCA as directors and shareholders and provided $10,000 in start-up capital for GMCA. According to A. Reali's testimony, Defendants signed documents on behalf of GMCA, including the Guarantee delivered to Plaintiff, and one of the reasons Defendants were made shareholders and directors of GMCA was so GMCA could use Defendants' credit in establishing its business. (Doc. No. 97, at 6). Plaintiff contends that the corporate records obtained from GMCA corroborate A. Reali's testimony concerning Defendants' involvement with the company and their knowing allowance of their names and credit to be used to assist in the start-up of GMCA. (Doc. No. 97, at 6-7).

In addition, Plaintiff points to the deposition testimony and subsequent declaration of Jill Crouch, the

---

[6] Defendants also rely in part on the pleadings filed by Plaintiff in the Prior Action, alleging that the debt being sued upon in the present case is based upon forged and fraudulent loan documents submitted to Plaintiff by A. Reali and Durkin. Defendants argue that the allegations in the Prior Action coupled with the conclusions of Defendants' expert forensic document examiner Ms. Berrie-Perrino, clearly show that there are no disputed issues of material fact that the signatures on the Continuing Guarantee are not theirs. As noted in the Court's Order denying Defendants' request for judicial notice of the pleadings in the Prior Action (Doc. No. 130) the pleadings are not evidence. Moreover, the pleadings in the Prior Action are not relevant to the Court's consideration of the present motion.

[7] Plaintiff first argues that Defendants should not have been given leave to amend their initial motion for summary judgment and Ms. Berrie-Perrino's Supplemental Expert Report should be stricken. In light of the Court's Order on January 17 denying Plaintiff's motion to strike, the Court finds that the order granting Defendants leave to amend their initial motion was not in error and the Defendants' initial and Supplemental Expert Reports are properly before this Court.

notary whose name appears on the Guarantee, as evidence that it claims creates a triable issue of fact. Plaintiff concedes that Ms. Crouch testified that she could not specifically recall notarizing Defendants' signatures because she did it more than four years prior, but points out that the she testified that signature and notary block that appear on the Guarantee are hers. (Doc. No. 97, at 7). Moreover, although Ms. Crouch originally questioned the authenticity of the photocopied Guarantee at deposition, she subsequently clarified her testimony after reviewing the original Guarantee bearing both her and Defendants' signatures and executed a Declaration that she notarized the signatures of Defendants on the Guarantee and the original Guarantee does not appear to be altered in any way.  According to Plaintiff, the opinions in Defendants' expert's reports are simply that – opinions, and the testimony of A. Reali and testimony and declaration of Ms. Crouch, if accepted as true, is evidence that directly contradicts Defendants' affidavits and the expert's opinions.  (Doc. No. 97, at 12-13).

In determining whether Defendants have established that there is no genuine issue of fact on the issue of whether the signatures on the Guarantee are not theirs, the Court must consider the facts and evidence in the light most favorable to Plaintiff.  Defendants rely on their expert's opinions and the fact that Plaintiff is relying on the testimony A. Reali, one of the alleged forgers who has invoked his Fifth Amendment rights in deposition, and Ms Crouch, a notary who cannot say she remembers Defendants actually signing the document, as support for their assertion that they are entitled to summary judgment.  Clearly the testimony and evidence presented by both Plaintiff and Defendant involve issues of credibility that must be considered by the trier of fact and cannot be determined by the Court at the summary judgment stage.  While the Court acknowledges that Plaintiff has not presented any expert testimony to refute Defendants' expert's opinions, the Court finds that the testimony and evidence presented by Plaintiff appears to directly contradict Defendant's affidavits and Ms. Berrie-Perrino's opinion's regarding the signatures.  If nothing else, Plaintiff has set forth sufficient evidence to establish that Defendants *may* have signed the Guarantee, thereby creating a triable issue of fact.  Accordingly, Defendants are not entitled to judgment as a matter of law.  The Court, therefore, denies Defendants' Amended Motion for Summary Judgment.

**III.** **CONCLUSION**

For the reasons set forth above and for good cause shown, the Court hereby DENIES Defendants Domenico Reali and Anna Reali's Amended Motion for Summary Judgment.

_____
Judge Thomas A. Wiseman, Jr.
Senior United States District Court Judge
Sitting by Designation in the Middle District of Florida